GREG G. GUIDRY, Judge.
12Pefendant in rule, Darren Yega, appeals from the trial court judgment reinstating the August 2, 2004, judgment which had been vacated by this Court pri- or to remanding the case for an evidentia-ry hearing. For the reasons which follow, we affirm.
This litigation commenced on August 27, 1986, when Ms. Larabell filed a petition for separation. On February 9, 1987, the parties were granted joint custody of the minor children, with Ms. Larabell designated as the domiciliary parent. The same judgment ordered child support. On January 16, 1996, Ms. Larabell filed a Rule For Contempt and Increase In Child Support.
The court minute entry for May 9, 1996, indicates that counsel for both parties appeared before the court. It also provides “Consent read into record on above rules. Ms. Holahan [Ms. Larabell’s attorney] to prepare judgment.” A judgment was pre *615 pared indicating child support had been increased to $1,199.00 |sper month and it was signed by Ms. Larabell and her attorney and sent to Mr. Vega through his attorney.
When this case previously came before us, it was noted that in 2004, Ms. Larabell instituted proceedings in another state for past due child support, alleging Mr. Vega was in arrears as per the 1996 consent judgment. It was then that Ms. Larabell discovered that the 1996 judgment was not in the record. Vega v. Vega, 05-812 (La.App. 5 Cir. 3/28/06, 925 So.2d 779) (Not Designated for Publication).
Ms. Larabell thereupon filed the instant Motion to Compel signing of the 1996 judgment. Without a hearing, and upon allegations that the transcript from the 1996 hearing in which the consent judgment was entered in open court could not be produced, the trial court, on August 2, 2004, signed what purported to be a judgment from the 1996 proceedings. Therein the trial court confirmed child support was, at that time, increased to $1,199.00. Mr. Vega appealed.
On appeal, this Court determined that the trial court judgment had been improperly entered while a hearing was pending and without sufficient evidence of the unavailability of the 1996 transcript or other facts which might shed light on the correctness of the judgment. The matter was, thus, remanded for a hearing.
On remand, Ms. Larabell introduced evidence regarding the unavailability of the 1996 transcript in which the consent judgment was recited in open court. She introduced the judgment, as drafted by her attorney in accord with the court’s order. It was signed by both she and her attorney, with a cover letter transmitting it to Mr. Vega’s attorney for their signatures. She also introduced evidence of the events following entry of the consent judgment indicating Mr. Vega’s acquiescence in the terms of the judgment as alleged. More specifically, she introduced evidence that he started paying $1,199.00 in child support in accord |4with the agreement, and continued to pay that amount for approximately eight years.
In reconsidering the case on remand following the hearing, the trial court expressly noted that it was influenced in its decision by the fact that Mr. Vega, after requesting the hearing through the appellate process, did not attend it. The trial court further noted that Mr. Vega is the sole person who could refute the terms of the consent judgment, as alleged by Ms. Larabell if they were incorrect, and he has not done so. Thus, Ms. Larabell’s assertions, testimony, and evidence, are uncon-tradicted. Moreover, the trial court found the record replete with evidence supporting the finding that the parties agreed in 1996 to an increase in child support to $1,199.00. The trial court then rendered judgment reinstating its August 2, 2004, judgment, finding child support was agreed upon by the parties in the amount of $1,199.00 per month and that Mr. Vega was to maintain medical and dental policies for the children. The 2004 judgment was attached to the court’s current ruling. It is from this ruling that Mr. Vega again comes before this Court on appeal.
On appeal this time, Mr. Vega again argues that there are technical deficiencies in the trial court judgment but, again, does not take issue with its substance. Rather, after not appearing in the trial court for the hearing we ordered at his request, where the issues were to be finally resolved, he again requests that the judgment be set aside on technicalities.
Mr. Vega argues that the trial court judgment should be set aside again because a consent judgment cannot be prov *616 en by parol evidence, and because the judgment entered by the court goes beyond what was requested in Ms. Larabell’s initial pleading.
1sMs. Larabell argues to the contrary that the parties were not before the court to prove a consent judgment. The consent judgment was entered into on the record before the court in 1996. Had the record existed, the consent judgment would have been readily available. The parties were before the trial court on remand for a hearing to make an evidentiary record establishing that the prior transcript was unavailable and further, what the record contained.
La. C.C. art. 3072 provides:
A compromise shall be made in writing or recited in open court, in which case the recitation shall be susceptible of being transcribed from the record of the proceedings.
In DeSoto v. DeSoto, 96-1079, p. 3-4 (La.App. 5 Cir. 4/29/97), 694 So.2d 1043, 1045-1046, cited approvingly in the comments to La. C.C. art. 3072, this Court considered the question of what constituted a valid consent judgment. Therein, we held:
“A contract is formed by the consent of the parties established through offer and acceptance.” La. Civ.Code Art. 1927. “An acceptance not in accordance with the terms of the offer is deemed to be a counteroffer.” La. Civ.Code Art. 1943.
A transaction or compromise is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing.
This contract must be either reduced into writing or recited in open court and capable of being transcribed from the record of the proceeding. The agreement recited in open court confers upon each of them the right of judicially enforcing its performance, although its substance may thereafter be written in a more convenient form.
La. Civ.Code Art. 3071.
“[T]he requirement that the agreement be reduced to writing necessarily implies that the agreement be evidenced by documentation signed by both parties.” Felder v. Georgia Pac. Corp., 405 So.2d 521, 523 (La.1981). It does not mean, however, that the agreement must be contained in one document: “It would |fisuffice that there be a written offer signed by the offerer and a written acceptance signed by the acceptor, even if the offer and the acceptance are contained in separate writings.” Id. at 523-524 (La.1981). When two instruments, read together, constitute a written compromise agreement outlining the obligations of each party and evidencing the acquiescence therein by both parties, they are an enforceable compromise agreement under La. Civ.Code Art. 3071. Id. at 524.
In Sullivan v. Sullivan, 95-2122 (La.4/8/96), 671 So.2d 315, the Supreme Court decided that a community property partition suit settlement was not enforceable. The parties verbally agreed to the terms of settlement and dictated those terms to a court reporter in an attorney’s office, but the former wife later refused to sign either the court reporter’s transcription of the agreement or a judgment prepared from the transcription.
[Djespite the parties’ oral acquiescence to the terms of a settlement and regardless of whether the transcription *617 of the oral discussion of the terms accurately reflected the substance of the negotiations, there could not be an enforceable settlement agreement under Article 3071 until those terms were reduced to a writing signed voluntarily by all parties or their authorized agents or until those terms were recited in open court with the consent of the parties.
In this case, the parties did come to an agreement concerning their differences, particularly, the amount of child support Mr. Vega would pay to Ms. Larabell. The court minute entry for May 9, 1996, indicates that the terms of the agreement were recited in open court with the consent of the parties. At that point, a binding agreement was entered. Thereafter, Ms. Larabell’s attorney memorialized the agreement in writing, acknowledging the parties agreement that Mr. Vega would pay Ms. Larabell $1,199.00 in child support monthly. This document was signed by Ms. Larabell and her counsel. The document was transmitted to Mr. Vega through his attorney. The document is not in the record. However, the record clearly indicates that Mr. Vega agreed to the terms of the agreement.
On the same date that the consent judgment was entered into, the record indicates Mr. Vega signed a Domestic Collections Form with the pertinent 17information regarding his employer, monthly income, and social security number. Also on that same date, the hearing officer signed a System Change Form for the Domestic Relations Support Enforcement System of the Twenty Fourth Judicial District Court, in accord with the consent agreement, indicating Mr. Vega’s child support obligation had been increased to $1,199.00. And just a few days later, on May 14, 1996, the trial judge signed the Income Assignment Order issued to Mr. Vega’s employer, as provided by Mr. Vega in the signed Domestic Collections Form, authorizing withholding from Mr. Vega’s income in the amount as agreed upon by the parties in the May 9, 1996, consent agreement entered in open court. Also, Mr. Vega continued to pay this amount for almost eight years. And, perhaps most significant, Mr. Vega has not disputed the fact, asserted by Ms. Lara-bell, and found by the trial court, that he did agree to pay $1,199.00 in child support in the 1996 consent agreement. Therefore, we find that, although not in one document, the instruments contained in the record, when read together evidence the acquiescence by both parties to the increase in child support in the amount of $1,199.00 to be paid by Mr. Vega.
Mr. Vega cites several cases in support of his argument that the agreement, which he does not contend is inaccurate, should nevertheless be unenforceable because the record of the consent judgment has been lost. We find the cases he relies on unpersuasive considering the facts presented. In both Kee v. Cuco’s, 92-685 (La.App. 3 Cir. 5/5/93), 618 So.2d 12, and Abadie v. Metropolitan Life Insurance Co., 97-932 (La.App. 5 Cir. 4/9/98), 712 So.2d 932, writ denied, 98-1268 (La.6/26/98), 719 So.2d 1059, there was a dispute as to the exact terms of the agreement. In this case, the terms of the agreement have not been disputed.
|gMr. Vega also argues that the trial court judgment goes beyond what was requested in the pleadings and is, therefore, invalid. As a result of Mr. Vega’s first appeal, this Court remanded the case for an evidentiary hearing to create a record on the question of whether the 1996 record was unavailable and on the terms of the 1996 consent agreement. Mr. Vega requested the remand and was well aware of the nature of the proceedings as ordered by this Court in response to his *618 appeal. Thus, we find the judgment rendered by the trial court was within the parameters of the remand order by this Court entered pursuant to Mr. Vega’s appeal.
Finally, Mr. Vega argues that Ms. Larabell’s action should be barred as abandoned because she waited eight years before filing this action. We find no merit in this argument. Ms. Larabell had no reason to file any motions concerning the consent agreement prior to 2004 because Mr. Vega continued to pay child support during that eight year period in accord with the 1996 consent agreement. As soon as Mr. Vega stopped paying, Ms. Larabell filed the instant action to pursue her legal recourse and has continued to do so over the past four years despite Mr. Vega’s delay of a final ruling.
Accordingly, for the reasons assigned herein, we affirm the trial court judgment, reinstating its August 2, 2004, judgment.

AFFIRMED.